**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| WENDY L. SWAN,<br><br>　　　　Plaintiff,<br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. C16-0112-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I.　INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, United States Magistrate Judge. *See* Doc. No. 18. Judge Mahoney recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Wendy Swan's application for Social Security disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).

Swan has filed timely objections (Doc. No. 19) to the R&R. The Commissioner has filed a response (Doc. No. 20). The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.　APPLICABLE STANDARDS

### A.　*Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial

evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 641, 645 (8th Cir. 1999.) The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently."

*Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Judge Mahoney noted that Swan alleged disability due to depression, anxiety and attention deficit hyperactivity disorder (ADHD). Doc. No. 18 at 1. After setting forth the relevant facts, she discussed the ALJ's decision to discount the treating sources' work-related limitations as follows:

> As part of their RFC assessments, Drs. Netolicky and Perkins had to evaluate Swan's mental ability to perform various work activities, including her ability to concentrate, to follow instructions, to interact with coworkers and the public, and to maintain regular attendance. AR 469-71, 474-76. They both noted serious limitations in Swan's ability to pay attention for more than two hours and to deal with work stress, and they both found that she would miss more than four days of work a month due to her impairments. *Id*. At the time they evaluated Swan's RFC, Dr. Netolicky had been treating Swan every one to three months for more than four years, and Dr. Perkins had been treating Swan biweekly for almost two years. AR 467, 471, 472, 476. This treatment consisted primarily of psychotherapy and, in Dr. Netolicky's case, prescribing medications, although Dr. Perkins administered several neuropsychological tests when she first evaluated Swan in 2012. AR 448-55, 467, 472. Treatment notes reflect that the doctors made objective assessments of Swan based on their observations, such as evaluating her mood and grooming, but also that they took note of Swan's communicated feelings of anxiety and mood. AR 478-503.
>
> Substantial evidence supports the ALJ's determination that Swan's treating doctors' RFC assessments were based on Swan's statements of her

> limitations. The only objective testing of Swan was done by Dr. Perkins in 2012, and that testing does not support limitations as severe as those found by Swan's treating doctors. On the Connors' Continuous Performance Test II—which tests focused, sustained attention—Swan's overall performance "was labeled as good with no indication of attention difficulties." AR 454. Other tests revealed only "mild difficulties with fluctuating attention and distractibility" in the "quiet, distraction-free testing environment." *Id*. The Minnesota Multiphasic Personality Inventory-2 RF indicated that Swan had "cognitive deficits related to memory" and concentration. *Id*. It also showed that she suffered from "emotional distress related to anxiety and depression," as well as social avoidance and "feelings of interpersonal persecution." *Id*. The neurophysiological test results do not speak to many of the abilities evaluated by Drs. Netolicky and Perkins in their RFC assessments, such as Swan's ability to maintain attendance or deal with work stress. Moreover, the test results contradict Drs. Netolicky's and Perkins's assessments regarding Swan's ability to pay attention: they both found that she would be unable to meet competitive standards when it came to maintaining attention for two hours, but the test results indicate only mild difficulties at most. AR 454, 469, 474.

Doc. No. 18 at 12-13. Judge Mahoney found that substantial evidence supported the ALJ's determination that the work-related limitations provided by Drs. Netolicky and Perkins were based on Swan's subjective complaints and not objective medical testing. *Id*. at 14-15.

Judge Mahoney next evaluated the weight the ALJ gave to the treating sources, and whether the ALJ offered good reasons for discounting their opinions, as follows:

> The ALJ found Swan exaggerated "the intensity, persistence and limiting effects of [her] symptoms."[1] AR 19. Thus, the ALJ gave only some and limited weight to her treating doctors' opinions because those opinions were based on Swan's subjective statements of her symptoms. AR 20-21. Because Swan's treating doctors relied on Swan's discredited description of her limitations when determining her RFC (as opposed to "medically acceptable clinical and laboratory diagnostic techniques"), the ALJ was not required to give their opinions controlling weight. *See Julin v. Colvin*, 826 F.3d 1082, 1085, 1089 (8th Cir. 2016) (holding that the ALJ

---

[1] Swan does not challenge this credibility finding.

5

> "permissibly declined to give controlling weight to [the treating doctor's] opinions on [claimant's] work-place limitations" that "relied on [claimant's] subjective complaints" of depression and anxiety when the ALJ had found the claimant not credible); *Papesh*, 786 F.3d at 1132-33 (holding that the ALJ's finding that the treating doctor's opinion "appears to be based on the claimant's subjective assertions of pain" was a "potential bas[i]s to not give *controlling* weight to [the] opinion").

Doc. No. 18 at 15-16. Judge Mahoney recommends a finding "that the ALJ did not err in assigning only some and limited weight to the opinions of Swan's treating physicians, since those opinions were based on Swan's subjective statements of her symptoms that the ALJ found exaggerated." *Id.* at 18.

Finally, Judge Mahoney evaluated whether some medical evidence supported the ALJ's RFC finding:

> Here, the ALJ incorporated some of the limitations found by Drs. Netolicky and Perkins into her RFC determination. For example, Drs. Netolicky and Perkins noted Swan faced serious difficulties in understanding and carrying out detailed instructions, interacting with people, and responding appropriately to changes in a routine setting. AR 469-70, 474-75. The ALJ's RFC determination recognized these limitations:
>
>> [Swan] can perform tasks learned in 30 days with simple work decisions, little judgment and occasional work place changes. She can tolerate only occasional interpersonal interaction. She is unable to work in close proximity with others, such as she cannot stand next to or be involved with others['] tasks or vice versa.
>
> AR 17.
>
> The ALJ's RFC determination, however, does not include Drs. Netolicky's and Perkins's findings that Swan could not pay attention for two hours, maintain socially appropriate behavior, make it through a workday or work week without interruptions from her impairments, sustain an ordinary routine without special supervision, or miss less than four days of work a month. AR 469-71, 474-76. Instead, the ALJ relied on the

6

> opinions of two state agency medical consultants, who had found that Swan faced no or moderate limitations in those areas.[2] AR 21, 68-69, 80-81. The ALJ did not include these limitations because they were based on Swan's subjective complaints and were inconsistent with Swan's daily-living and work activities. AR 17-21. For example, Swan testified at the hearing that she was able to work on her jewelry for two hours at a time, and she had previously reported working four hours at a time on her jewelry—suggesting that she could maintain attention for two hours. AR 44, 242, 469, 474.

Doc. No. 18 at 19-20. Judge Mahoney found that the record does not support the extreme limitations set forth by Drs. Netolicky and Perkins. *Id.* at 20. Judge Mahoney further found that some medical evidence supported the ALJ's decision, noting that the ALJ adopted some limitations from Swan's treating doctors while properly discounting portions of their opinions. *Id.* at 20-21. As such, Judge Mahoney recommends I affirm the ALJ's determination that Swan is not disabled.

## IV. DISCUSSION

### A. *Swan's Objections*

Swan objects to Judge Mahoney's findings that (1) the ALJ's RFC properly included all work-related limitations and (2) that the ALJ's RFC was supported by substantial evidence. I will review these issues de novo.

### B. *The Work-Related Limitations*

The record includes work-related limitations offered by two treating sources, Bryan Netolicky, M.D., and Angela Perkins, Psy.D.

---

[2] The state agency consultants did not explicitly address how many days of work a month Swan would miss due to her impairments, but they did find her only moderately limited in her ability to maintain regular attendance. AR 69, 80.

### 1. *Dr. Netolicky*.

Dr. Netolicky opined, with regard to unskilled work, that Swan was unable to meet competitive standards in her ability to maintain attention for two hours, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, accept instruction and respond appropriately to supervisors, respond appropriately to changes in routine work setting, deal with normal work stresses. He also opined that Swan was either seriously limited or unable to meet competitive work standards in her ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. AR 469-70. Dr. Netolicky opined that Swan was limited but satisfactory with regard to her ability to understand and remember very short and simple instruction, carry out very short and simple instruction, make simple work-related decisions, ask simple questions or request assistance and be aware of normal hazards and take appropriate precautions. *Id.*

Dr. Netolicky further opined that Swan was seriously limited with regard to her ability to remember work-like procedures, maintain regular attendance and be punctual within customary, usual strict tolerances, and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* I note that "seriously limited" is not as limited as "unable to meet competitive standards" on the chart used by Dr. Netolicky. *Id.* Finally, Dr. Netolicky opined that Swan had no useful ability to function with regard to completing a normal workday and workweek without interruptions from psychologically based symptoms. *Id.*

In addressing Swan's specific job attributes, Dr. Netolicky opined that Swan was seriously limited with regard to her ability to interact appropriately with the general public and adhere to basic standards of neatness and cleanliness. He also opined that she could not meet competitive standards in her ability to travel in unfamiliar places. AR 470-71. Finally, Dr. Netolicky indicated that Swan would miss more than 4 days of work per

8

month. AR 471. Dr. Netolicky stated that Swan gets very anxious and depressed easily, especially when she is stressed or overworked. AR 471.

### 2. *Dr. Perkins*.

Dr. Perkins began treating Swan in 2012, and completed a mental medical source statement on May 7, 2014. AR 472-76. Dr. Perkins did not find greater limitations than Dr. Netolicky, with the following exceptions: (1) Swan's ability to perform at a consistent pace without an unreasonable number and length of rest periods showed that she was unable to meet competitive standards, (2) Swan's ability to accept instructions and respond appropriately to criticism from supervisors illustrated she had no useful ability to function, and (3) with regard to Swan's ability to deal with normal work stress, she had no useful ability to function. AR 475. Further, Dr. Perkins opined that Swan would miss more than 4 days of work a month. AR 476.

### 3. *Analysis*.

Like Judge Mahoney, I find that the record supports the ALJ's conclusion that Drs. Netolicky and Perkins based their opinions on Swan's subjective complaints. The only objective testing was performed by Dr. Perkins in 2012 and the results do not support the limitations offered by Drs. Netolicky and Perkins. After performing various objective tests, Dr. Perkins found that Swan exhibited only mild difficulties with fluctuating attention and distractibility. AR 451-52. Based on the Continuous Performance Test (CPT) II, Dr. Perkins found that Swan's performance ranged from atypical to average. AR 452. All of the objective testing reflected that Swan was among low average, average or high average. AR 452-53. The testing also reflected that Swan was within normal limits. AR 453.

9

Dr. Perkins' opinion is inconsistent with her objective medical testing and findings. "An ALJ may properly discount a doctor's opinion when it is based on a claimant's subjective complaints." *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). Due to this inconsistency, and the fact that Dr. Perkins relied on subjective complaints, the ALJ was permitted to discount Dr. Perkins' opinion.

The same reasoning applies to Dr. Netolicky, as his opinion, too, is inconsistent with the objective medical testing discussed above. An ALJ may discount the weight given to opinions of treating doctors when, as here, the opinions are inconsistent with other medical records. *See Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) ("We conclude that substantial evidence supports the ALJ's determination that [the doctor's] opinion was inconsistent with the treatment record and thus not entitled to controlling weight.") In addition, Dr. Netolicky's opinion expressly reflects that he relied on Swan's subjective complaints. He stated, for example, that Swan "has consistently expressed persistent difficulties in the above domain." AR 471. Dr. Netolicky also stated that Swan was forced to quit jobs due to her impairments and her work history demonstrated that she would not be able to maintain socially acceptable behavior in the long run. AR 470-71. This reflects reliance on Swan's self-reports concerning her symptoms and impairments.

Swan contends, however, that subjective complaints are an important diagnostic tool. While this is true, the ALJ expressly determined that her subjective complaints were not credible. AR 19. An ALJ is free to discount a treating source who relies on subjective complaints that lack credibility. *See Julin v. Colvin*, 826 F.3d 1082, 1089 (8th

Cir. 2016). Here, the ALJ found that Swan's subjective complaints were not credible. The ALJ based this conclusion on the fact that Swan's activities of daily livings did not support such extreme complaints. Swan was able to clean, run errands, prepare simple meals, take care of pets, manage finances, take care of personal hygiene needs, spend time with friend, go to church, read and watch television. AR 195-97, 214-15, 261-64; *see Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) (affirming the Commissioner's decision when the ALJ found that the claimant's activities of daily living were inconsistent with complaint of anxiety and depression). The ALJ considered the *Polaski* factors and provided good reasons for discounting Swan's subjective complaints.

For all of these reasons, I find that the ALJ properly discounted the rather-extreme limitations offered by Drs. Netolicky and Perkins. Swan's objection is overruled.

## C. The RFC Determination

Swan next objects that the ALJ's RFC finding was not supported by substantial evidence because no medical evidence supports the RFC. The crux of Swan's argument is that the RFC failed to include the work-related limitations offered by Drs. Netolicky and Perkins. However, I have already found the ALJ properly discounted these limitations.

I further find the ALJ's RFC is supported by some medical evidence and, therefore, is supported by substantial evidence in the record as a whole. The ALJ found that Swan had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> She can perform tasks learned in 30 days with simple work decisions, little judgment and occasional work place changes. She can tolerate only occasional interpersonal interaction. She is unable to work in close proximity with others, such as she cannot stand next to or be involved with others tasks or vice versa.

11

AR 17. As Judge Mahoney noted, these limitations incorporate some of the limitations described by Drs. Netolicky and Perkins. Doc. No. 18 at 19. The ALJ also relied on the opinions of two state agency medical consultants. AR 21, 68-69, 80-81. The fact that the ALJ discounted the opinions of treating sources does not mean there is no medical evidence supporting the RFC. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding the ALJ's residual functional capacity assessment was supported by substantial evidence, noting that it was consistent with the limitations identified by the reviewing consultant); *Julin*, 826 F.3d at 1089 (holding that some medical evidence supported the ALJ's RFC when the ALJ adopted some of the limitations offered by the treating source but declined to adopt those limitations that were based on the claimant's subjective complaints).

Based on my de novo review, I find the RFC is supported by some medical evidence. Swan's objection is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff Wendy L. Swan's objections (Doc. No. 19) to the Report and Recommendation are **overruled**.

2. Judge Mahoney's Report and Recommendation (Doc. No. 18) is **accepted without modification**.

3. The Commissioner's determination that Swan was not disabled is **affirmed**.

4. Judgment shall enter against Swan and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 17th day of August, 2017.

                                                                   _____
                                                                   Leonard T. Strand, Chief Judge